**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LM INSURANCE CORPORATION,     ) | |
|                         ) | |
|      Plaintiff,             ) | |
|                         ) | Case No. 05 C 1154 |
|     v.                  ) | |
|                         ) | Judge Joan B. Gottschall |
| FED EQUITIES, INC., MERR, INC.,    ) | |
| AFFILIATED INSURANCE AGENCY, INC., and ) | |
| ROBERT GRIMM,           ) | |
|                         ) | |
|      Defendants/Third-Party Plaintiffs,  ) | |
|                         ) | |
|     v.                  ) | |
|                         ) | |
| SOURCEONE GROUP, INC.,     ) | |
|                         ) | |
|      Third-Party Defendant, Counterclaimant. ) | |
|                         ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants, Fed Equities, Inc. ("Fed Equities"), Merr, Inc. ("Merr"), Affiliated Insurance

Agency, Inc. ("AIA"), and Robert Grimm ("Grimm") (collectively "AIA/Merriman"), have

moved for summary judgment on all seven counts of the Amended Complaint.[1] Plaintiff, LM

Insurance Corporation ("LM"), has cross-moved for partial summary judgment on Counts III

(negligent misrepresentation), IV (negligent omission), V (conversion), and VII (negligence).

Thus, only AIA/Merriman has moved for summary judgment on Counts I (breach of contract), II

(malpractice), and VI (constructive trust). For the reasons stated below, the court grants in part

and denies in part defendants' motion for summary judgment and denies plaintiff's cross-motion

for partial summary judgment.

---

[1] The Amended Complaint also names as a defendant Hilb, Rogal & Hobbs, Co., f/k/a
AIA/Merriman. A stipulation of dismissal was entered as to this defendant in March 2007.

# I.    BACKGROUND

The facts of this case are somewhat complicated.  LM, a workers' compensation insurer, has sued insurance brokers AIA/Merriman to recover policy premiums and insurance payouts made to Arena Football 2 Operating Company, LLC ("AF2"), a professional athletic league. AF2 was a client of SourceOne Group, Inc. ("SOG"), a professional employee organization that provides human resource and payroll services to organizations, such as AF2, that want to outsource these functions.  AIA/Merriman in turn filed a third party complaint against SOG, seeking contribution and indemnity. SOG subsequently filed a counterclaim against AIA/Merriman, alleging negligence.[2] LM also sued SOG for claims arising out of the same set of facts in a separate action before Judge Bucklo.  *LM Ins. Corp. v. SourceOne Group, Inc.*, No. 04 C 618 (filed Jan. 27, 2004).  That case settled and was dismissed by stipulation in November 2007.

At the core of the claims, LM alleges that AIA/Merriman issued a certificate of insurance pursuant to the National Council on Compensation Insurance's (NCCI) Assigned Risk Plan (the "Assigned Risk Plan") to AF2 without LM's knowledge or consent and that AIA/Merriman received premium payments from AF2 and SOG that AIA/Merriman did not remit to LM.  LM alleges that AF2 contracted with SOG to provide AF2 with a workers' compensation insurance policy.  Under this contract, SOG agreed to endorse AF2's employees onto its then-current workers' compensation policy (policy number WC5-34S35147-012) with LM.  LM alleges that AIA/Merriman was SOG's insurance broker for its policy with LM and that neither AIA/Merriman nor SOG ever informed LM of important details regarding AF2's coverage needs.

---

[2] Separate summary judgment motions have been filed on these claims, which the court is ruling on contemporaneously.  Additional background facts are contained in those opinions.

LM alleges that SOG instructed AF2 to send premium payments to AIA/Merriman. Before making any premium payments, LM alleges that AF2 requested and AIA/Merriman provided a certificate of insurance which stated that AF2 was covered under the LM worker's compensation policy. LM alleges that AIA/Merriman never informed LM about the issuance of the certificate of insurance. LM alleges that, after receiving the certificate of insurance, AF2 sent over $600,000 in premium payments to AIA/Merriman. LM alleges that AIA/Merriman never remitted any of the premium payments made by AF2 to LM.

## II. ANALYSIS

### A.    Summary Judgment Legal Standard

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). It is not appropriate if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325.

In response, the non-moving party cannot rest on the pleadings, but must designate specific material facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324. "The applicable substantive law will dictate which facts are

material.  Only disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *McGinn v. Burlington N.R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996) (internal citation omitted).  The non-moving party must make a "sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." *Salas v. Wis. Dep't of Corrs.*, 493 F.3d 913, 921 (7th Cir. 2007) (citing *Celotex*, 477 U.S. at 322-23).  The court must view the record and any inferences to be drawn from it in the light most favorable to the opposing party. *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991).

**B.    Arguments[3]**

   1.    <u>Count One: Breach of Contract</u>

AIA/Merriman argues a claim for breach of contract cannot stand because: (1) LM has admitted that there is no contract, written or oral, between AIA/Merriman and LM; and (2) the Assigned Risk Plan states that the insurance producer is not a party to the insurance contract.[4]  In response, LM concedes that there is no express contract, but disputes AIA/Merriman's assertion that no implied contract duty arose between the parties.

---

[3] The parties agree that Illinois law applies to all claims.

[4] The court notes that AIA/Merriman provides a quote from its Exhibit 1e, which is a 36-page printout of a webpage, without providing a specific reference to enable the court to locate and confirm the material.  Such a general citation to the record violates the court's standing order which warns that the court "will not search a multi-page document nor guess as to which language in a document the party relies on." *See* Standing Order, *available at* http://www.ilnd.uscourts.gov.  Also, AIA/Merriman's version of the Plan became effective January 1, 2006, but the events in this case took place in 2003.  LM supplied a version of the Plan effective January 1, 1999, with a website copyright date of 2003, that was printed in September 2005.  The language of both documents is similar, although not identical.  LM addresses the discrepancy between the documents in its response, arguing that, unlike that of AIA/Merriman, its version is relevant and contemporaneous, was produced in discovery, and was authenticated during expert witness depositions.  *See* LM's Resp. in Opp'n to AIA/Merriman's Mot. for Summ. J. at 9 n.3.  Since AIA/Merriman does not dispute this in its reply, the court adopts LM's version and strikes AIA/Merriman's version (including the quote from the 2006 version that it uses in its brief).

LM relies exclusively on *Liberty Mutual Insurance Co. v. Paul E. Larson Insurance Agency, Inc.*, 98 C 2961, 1999 WL 202971 (N.D. Ill. Mar. 31, 1999), in support of its position. In *Larson*, the court denied a motion to dismiss a breach of contract claim premised on facts very similar to those at bar. 1999 WL 202971 at *10. An insurer claimed an implied contract with an insurance producer, based on the duties of good faith and fair dealing implied into brokering workers' compensation insurance deals pursuant to the Assigned Risk Plan. *Id.* The court concluded that the producer was "being held to its own alleged implied contract with [the insurer]" and not to the terms of the express contract between the insurer and the insured. *Id.* In reply, AIA/Merriman correctly observes that the court in *Larson* only concluded that the insurer could proceed on its theory of breach of implied contract; here, LM must provide a sufficient question of material fact on its *prima facie* case to survive summary judgment.

An implied contract may be "implied in law," where "by fiction of law, a promise is imputed to perform a legal duty," or "implied in fact," where a contract is "founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Baltimore v. O.R. Co. v. United States*, 261 U.S. 592, 597 (1923); *accord Suarez v. Pierand*, 663 N.E.2d 1039, 1044 (Ill. App. 1996) ("The law recognizes two kinds of implied contracts, those implied in fact and those implied in law."). Contracts implied in fact "arise from a promissory expression that is inferred from circumstantial evidence of an intent to be bound," whereas contracts implied in law "arise notwithstanding the parties intentions, result from a duty imposed by law, and are contracts merely in the sense that they are created and

governed by principles of equity." *Zadrozny v. City Colls. of Chi.*, 581 N.E.2d 44, 47-48 (Ill. App. 1991).

LM fails to clarify if its claim is brought as a contract claim implied in fact or implied under law. It alleges that "the parties have an implied duty of good faith and fair dealing." Am. Compl. ¶ 45. It further argues that an "implied contractual duty arose . . . based on AIA/Merriman's duties and responsibilities under the [Assigned Risk] Plan." LM's Mem. in Opp'n to AIA/Merriman's Mot. for Summ. J. at 2. It does not point to any actions that indicate an agreement between the parties from which the court could find an implied contract in fact. Thus, LM must be asserting that a contract was implied in law, based on AIA/Merriman's obligations under the Assigned Risk Plan. "The basis for recovery under the doctrine variously referred to as quasi contract, contract implied in law, or quantum meruit is unjust enrichment, that is, where the defendant receives a benefit from the plaintiff which would be unjust for the defendant to retain without paying for it." *City of Marshall v. City of Casey*, 532 N.E.2d 1121, 1123 (Ill. App. 1989) (quoting 12 Ill. L. & Prac. Contracts § 6, at 251-52 (1983)).

The problem here is not, as AIA/Merriman asserts, that it is not a party to the contract between AF2 and LM. As the *Larson* court held, a claim of implied contract breach may properly be asserted against an insurance broker, notwithstanding the fact that the parties to the express contract are the insurer and its insured. Rather, the problem is that LM fails to show any benefit that it provided to AIA/Merriman to provide the basis for an unjust enrichment claim. LM's services, namely providing insurance coverage, benefited SOG and AF2, not AIA/Merriman. LM is seeking damages to compensate it for premiums and claims made pursuant to its coverage of AF2 and allegedly retained by AIA/Merriman, but it is not seeking

any compensation for services it provided directly to AIA/Merriman. *See* LM Resp. in Opp'n to AIA/Merriman's Mot. for Summ. J. at 3 ("AIA/Merriman's breach [of its implied contractual duties] damaged LM – whether the measure of those damages are the $1,734,193.00 in unpaid premiums or the $2,790,856.00 in claims that LM has paid."). LM cites the court to (disputed) facts that AIA/Merriman breached its obligations under the Assigned Risk Plan, but it does not allege any exchange between the parties or clarify how AIA/Merriman was unjustly enriched by some service LM provided. *See* LM's Statement of Facts ¶¶ 109-20 (discussing the provisions of the Assigned Risk Plan and how AIA/Merriman failed to comply); *id.* Tab 21 at LMIC-2274 (producer's duties and responsibilities under the Assigned Risk Plan). LM does not point the court to any case that stretches the concept of an implied contract this far and fails to provide sufficient facts to make out a *prima facie* case of breach of implied contract. "Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex Corp.,* 477 U.S. at 322). Therefore, AIA/Merriman's motion for summary judgment is granted as to Count I.

      2.    <u>Claims That Sound In Negligence</u>

In its motion, AIA/Merriman argues that Counts II-IV and VII: (1) are barred by the *Moorman* Doctrine; (2) fail as a matter of law because AIA/Merriman owed no duty to LM; and (3) fail as a matter of law because AIA/Merriman's actions were not the proximate cause of LM's damages. AIA/Merriman suggests that LM has "utterly failed to put forth one scintilla of evidence" to prove its claims. AIA/Merriman Mem. of Law in Supp. of Mot. for Summ. J. at 11.

LM responds that the *Moorman* Doctrine is inapplicable, or an exception applies, and that the evidence to support its claims is undisputed such that it has cross-filed for summary judgment on Counts III, IV, and VII.

In its cross-motion, LM sets forth its *prima facie* case and argues that there are no material facts in dispute to bar the entry of summary judgment in its favor. In response, AIA/Merriman argues that: (1) the *Moorman* Doctrine applies; (2) AIA/Merriman does not owe a duty to LM ; and (3) LM has not established the elements of its claims, namely that there was a false statement of material fact, carelessness or recklessness in ascertaining the truth of statements, or an intent to induce, and has not presented evidence that LM relied on the statements or suffered damages as a result.

> a.     The Moorman Doctrine

AIA/Merriman asserts, in a conclusory fashion, that "LM's tort claims are barred by the *Moorman* doctrine, as LM seeks to recover economic losses in tort." AIA/Merriman Mem. of Law in Supp. of Mot. for Summ. J. at 6. Both parties provide a solid overview of the law, but fail to apply it to the facts of the case.[5] In *Moorman Manufacturing Co. v. National Tank Co.*, 435 N.E.2d 443 (Ill. 1982), the Illinois Supreme Court established the "economic loss" rule, holding that a plaintiff may not recover solely economic losses under tort theories of negligence, innocent misrepresentation, or strict liability. *Id.* at 449-50. In *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 503 N.E.2d 246 (Ill. 1986), it extended the rule, holding that a plaintiff cannot recover in tort where it seeks to recover for purely economic losses due to defeated

---

[5] Neither party addresses, for example, whether the fact that there was no express contract between LM and AIA/Merriman affects the applicability of the *Moorman* Doctrine. Absent briefing, the court declines to address the issue.

economic expectations of a commercial bargain, even if it cannot prevail on a contract claim. *Id.* at 249.

Here, it appears the damages being sought by LM are lost profits (in the form of premiums not received and insurance claim payouts on a policy to which LM says it would not have agreed). *Compare* LM Resp. in Opp'n to AIA/Merriman's Mot. for Summ. J. at 3 ("AIA/Merriman's breach [of its implied contractual duties] damaged LM – whether the measure of those damages are the *$1,734,193.00 in unpaid premiums or the $2,790,856.00 in claims that LM has paid*." (emphasis added)), *with* Am. Compl. at 9, 13, 15, 18 (damages of $1,734,193.00 claimed in Counts I-IV). The *Moorman* Doctrine requires that a plaintiff bringing a negligence claim seek damages "above and beyond disappointed expectations." *Anderson Elec., Inc.*, 503 N.E.2d at 247 (citing *Redarowicz v. Ohlendorf*, 441 N.E.2d 324 (Ill. 1982)). Based on the limited briefing supplied, the court finds that the *Moorman* Doctrine bars LM's negligence claims, absent an exception.

The Illinois courts have established only three exceptions to the *Moorman* doctrine: (1) where a plaintiff sustained personal injury or property damage; (2) where the plaintiff's damages are caused by fraud; and (3) where the plaintiff's damages are caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions. *See In re Chi. Flood Litig.*, 680 N.E.2d 265, 275 (Ill. 1997). LM invokes exceptions two and three, asserting that AIA/Merriman: (1) was in the business of supplying information; (2) owed extra-contractual duties to LM; and (3) intentionally misrepresented facts.

LM relies on *Geneva Assurance Syndicate, Inc. v. Associated Agencies, Inc.*, 92 C 1652, 1999 WL 731788 (N.D. Ill. Aug. 30, 1999), to support its argument that an insurance broker is in the business of supplying information to an insurer. AIA/Merriman contends that the case is inapplicable because it dealt with a motion to dismiss, not a motion for summary judgment. The facts in *Geneva* are similar to those at bar: an insurer brought negligence claims against an insurance broker for failure to inform and failure to remit premiums. *Id.* at *1. After considering an argument regarding the agency relationship between the parties, the court turned to the applicability of the *Moorman* Doctrine. *Id.* at *4. It concluded that the insurer plaintiff had sufficiently alleged that the defendant broker was in the business of supplying information and was negligent in doing so. *Id.*

Because of the procedural posture in *Geneva*, the case does not help the court answer the question before it, namely what LM must prove AIA/Merriman has done to justify invoking the "supplying information" exception at summary judgment stage. The parties disclose (and the court found) no cases, other than *Geneva*, that deal with the exemption as it applies between insurers and insurance brokers, although other cases deal with brokers and other actors. *See, e.g.*, *Decatur Mem. Hosp. v. Conn. Gen. Life Ins. Co.*, 990 F.2d 925, 928 (7th Cir. 1993) (insurance carriers are not in the business of supplying insurance coverage information to medical providers); *LeDonne v. Axa Equitable Life Ins. Co.*, 411 F. Supp. 2d 957, 963 (N.D. Ill. 2006) (a single-firm insurance agent supplies non-informational products to insureds, but an insurance broker who sells policies for multiple insurers supplies information (internal citations omitted)); *Lake County Grading Co. of Libertyville, Inc. v. Great Lakes Agency, Inc.*, 589 N.E.2d

1128, 1132 (Ill. App. 1992) (not reaching the issue of whether an insurance broker supplied information to an insured because the broker had an extra-contractual fiduciary duty to insured).

The case law regarding the "supplying information" exception indicates that no claim can be brought if the defendant is not in the business of purely supplying information or where the information is "merely ancillary to the sale of a product." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 334-35, 341 (Ill. 2006) (concluding that a title insurance company is not in the business of supplying information). Illinois courts have recognized that between the "pure" information providers (such as accountants and attorneys) and the obvious tangible good providers (such as computer software manufacturers) lie a range of businesses that do both. *See Tolan & Son, Inc. v. KLLM Architects, Inc.*, 719 N.E.2d 288, 296-97 (Ill. App. 1999). *Compare 2314 Lincoln Park West Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346 (Ill. 1990) (no claim against an architect because, although an architect supplies information, "the character of that function should not be overstated"), *and Anderson Elec., Inc.*, 503 N.E.2d 246 (Ill. 1986) (no claim possible against a contractor who installed electrical units), *with Perschall v. Raney*, 484 N.E.2d 1286 (Ill. 1985) (claim possible against a home inspector), *and Duhl v. Nash Realty Inc.*, 429 N.E.2d 1267 (Ill. 1981) (claim possible against an appraiser).

The court in *Tolan & Son, Inc.* placed an insurance broker at the "pure information end" of the continuum of enterprises that supply information, but it did so in regard to the broker's relationship to an insured. *Tolan & Son, Inc.*, 719 N.E.2d at 296-97. Nevertheless, such a placement is instructive as to Illinois courts' view of where on the continuum an insurance broker should fall.[6] AIA/Merriman argues that any information it supplied was solely for the

---

[6] LM urges the court to eliminate the distinction between a broker's obligation to insured and insurer based on the blurring of roles causes by the use of the term "insurance producer" to refer

benefit of the insured, thus implying that it has no obligation to supply information to the insurer. However, Illinois law allows for the possibility that an insurance broker's obligations run to both the insured and the insurer. *See Geneva Assurance Syndicate, Inc.*, 1999 WL 731788 at *3 (noting that the question of whether an insurance broker is the agent of the insured or insurer is generally one of fact and that, under Illinois law, "an insurance agent can be the agent of the insurer, the agent of the insured, or, in some circumstances, the agent of both" (citing to *Am. Ins. Corp. v. Sederes*, 807 F.2d 1402, 1405 (7th Cir. 1986); *Galiher v. Spates*, 262 N.E.2d 626, 627 (Ill. App. 1970))).

The court finds that, pursuant to *Geneva* and in line with other Illinois cases, the "supplying information" exemption is tenable between a broker and an insurer, but as AIA/Merriman notes, a question remains as to whether LM has provided sufficient facts to establish such an exception. LM points to the following facts (the implications of which are disputed) to show that AIA/Merriman supplied it with information: (1) LM was denying AF2's claims before July 17, 2003; and (2) on July 17, 2003, AIA/Merriman sent LM a fax of the Travelers' AF2 endorsement, on which was written: "Bob Grimm requested that I fax you a copy of the endorsement on Source One Group that added alternate employer AF2. Please call me if you need anything further. Thank you." LM Statement of Facts ¶¶ 52-56. Drawing inferences in favor of LM, the fax demonstrates that AIA/Merriman was passing on information about AF2 to encourage LM to endorse AF2 onto its existing SOG policy.

To determine whether a negligence claim falls within *Moorman* Doctrine, the court must also look at nature of the duty. *2314 Lincoln Park West Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346, 352-53 (Ill. 1990) (holding that if defendant owed a duty to the

---

to both in the Illinois statutes. The court declines to do so in the absence of guidance from Illinois state courts that such a wholesale expansion is appropriate.

plaintiff to prevent precisely the type of harm that occurred, an exception to the *Moorman*

Doctrine exists).  LM could not properly evaluate the cost of providing coverage to AF2 absent

accurate information.  Here, the harm that resulted, namely underpayments of premiums and

excess claims, is precisely the harm that could have been anticipated from AIA/Merriman's

alleged actions.  Based on the foregoing, the court concludes LM's negligence claims fall within

the scope of the "supplying information" exception to the *Moorman* Doctrine.  The court does

not reach the issue of whether any other exception may also apply.

      *b.*     *Negligence Elements*

To prevail in a negligence action under Illinois law, LM must prove that AIA/Merriman:

(1) owed it a duty of care; (2) breached that duty; and (3) the breach proximately caused the

injury.  *Ward v. K Mart Corp.*, 554 N.E.2d 223, 226 (Ill. 1990).  AIA/Merriman argues that

LM's negligence claims fail as a matter of law because AIA/Merriman owed no duty to LM and

because AIA/Merriman's actions were not the proximate cause of LM's damages.  "The

existence of a duty is a question of law for the court to decide.  The issues of breach and

proximate cause are factual matters for a jury to decide, providing there is a genuine issue of

material fact regarding those issues."  *Espinoza v. Elgin, Joliet, & Eastern Ry. Co.*, 649 N.E.2d

1323, 1326 (Ill. 1995).

AIA/Merriman argues that the Assigned Risk Plan establishes no duty on the part of the

broker because it is non-binding, only describes services and not duties, and specifically states

that the contract is between the insured and the insurer.  The argument is without merit.

AIA/Merriman sidetracks the discussion by focusing on NCCI's role within the Assigned Risk

Plan and avoids addressing the obvious hole in its argument, namely why the Illinois Legislature

would allow AIA/Merriman to be part of the Assigned Risk Plan without imposing any obligations on it to act reasonably in completing its tasks. AIA/Merriman asks the court to assume that a broker's follow-through on a transaction on behalf of an insured is purely voluntary, notwithstanding the important role played by the broker in ensuring that Illinois workers are covered by workers' compensation, and despite the fact that the regulations clearly state that they "apply to . . . licensed agents or brokers acting on behalf of [employers seeking Assigned Risk Insurance]." Ill. Adm. Code tit. 50, § 2904.20. AIA/Merriman's argument defies common sense.

Next, AIA/Merriman denies that the Assigned Risk Plan uses the word "duty" when referring to a broker's services under the Assigned Risk Plan, relying on a version of the Assigned Risk Plan that did not even become effective until 2006, and, as LM points out, was not yet in effect when the events at issue took place.[7] *Compare* AIA/Merriman Statement of Facts, Ex. 1e (stricken 2006 version of the Assigned Risk Plan), *with* LM Statement of Facts, Ex. 21 at LMIC-2274 (Assigned Risk Plan with website copyright date of 2003 that describes "duties and responsibilities under the [Assigned Risk] Plan" for insurance producers). The Assigned Risk Plan requires an insurance producer to report "changes that may affect the policy or the services being provided" and to "forward[] promptly all premium payments received," among other things.[8] Whether or not LM can point to the section of the Administrative Code that codifies these duties is irrelevant given that they are clearly set out in the Assigned Risk Plan as duties of the provider and AIA/Merriman's argument to the contrary is specious.

The court finds that AIA/Merriman had a duty to LM under the Assigned Risk Plan to provide LM with accurate information and to forward premium monies and that AIA/Merriman

---

[7] The court strikes AIA/Merriman's exhibit. *See* note 4, *supra*.
[8] Even in the 2006 version, these are "services" that an insurance producer agrees to perform.

owed these duties to LM once it volitionally interposed itself into the brokering of insurance

under the Assigned Risk Plan for SOG/AF2.[9]  In its motion for summary judgment,

AIA/Merriman did not address the record or show an absence of material issues of fact on these

claims, as it must to prevail.[10]  *See* Fed. R. Civ. P. 56(c).  Therefore, AIA/Merriman is not

entitled to judgment as a matter of law and its motion for summary judgment as to Counts II-IV

and VII is denied.  This does not conclude the court's consideration of these counts, however,

because LM has cross-moved for summary judgment on Counts III-IV and VII.[11]

> c.     *Counts Three & Four: Negligent Misrepresentation/Negligent Omission*[12]

Under Illinois law, a claim of negligent misrepresentation requires a plaintiff to prove:

"(1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of

the statement by the party making it; (3) an intention to induce the other party to act; (4) action

by the other party in reliance on the truth of the statement; (5) damage to the other party resulting

---

[9] Having found a duty, the court does not reach the issue of proximate cause, leaving that for the jury.

[10] It does this in its response to LM's motion, but not in its own motion.  At most, this allows AIA/Merriman to withstand summary judgment, but not to prevail on its own motion.

[11] LM has moved, as part of its reply in support of its motion for summary judgment, to strike AIA/Merriman's alleged improper denials to LM's statement of facts.  To be sure, AIA/Merriman asserts a lot of objections and general denials.  However, it does not simply object; it also answers as disputed or undisputed.  The court declines to strike any answers for which AIA/Merriman has simply inserted additional text.  LM also contends that AIA/Merriman improperly denies facts to which there can be no dispute.  The rules require that any disputed fact be accompanied by a citation to the record to support the dispute.  *See* Local Rule 56.1(b)(3)(B).  In the case of disputed facts, the court examines the record for evidence of a dispute, and, if it can find none, the court deems the fact undisputed (in effect, striking the improper denial).  Thus, all a litigant accomplishes by wrongly disputing a fact is making the court do additional work.  To the extent that AIA/Merriman's responses to LM's statement of facts comport with Local Rule 56.1 and are supported by the record, the motion is denied; to the extent they do not, it is granted.

[12] The court's research did not uncover any cases dealing with a separate cause of action for "negligent omission," although it did find cases alleging a cause of action for fraudulent concealment and cases where a claim for "negligent misrepresentations and omissions" was brought (including LM's case against SOG in front of Judge Bucklo).  However, in the absence of briefing, the court declines to reach the issue whether such a claim exists under Illinois law.

from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *First Midwest Bank, N.A.*, 843 N.E.2d at 334-35 (citing *Bd. of Educ. of the City of Chi. v. A, C. & S, Inc.*, 546 N.E.2d 580, 591 (Ill. 1989)).  Where a plaintiff seeks purely economic damages, a party generally has no duty to avoid negligently conveying false information unless it "is in the business of supplying information for the guidance of others in their business transactions."  *Id.* at 335 (citing *Brogan v. Mitchell Int'l, Inc.*, 692 N.E.2d 276, 278 (Ill. 1998); *Moorman Mfg. Co.*, 435 N.E.2d at 452).

The court has already determined that AIA/Merriman was in the business of supplying information for the guidance of LM in its business transactions and that it owes a duty to LM. *See* § II(B)(2)(a)-(b) *supra*.  Although the disputed material facts on the remaining elements seem to be small in number, the inferences that each party asks the court to draw from them are widely divergent.  For example, it is undisputed that AIA/Merriman was aware of jurisdiction issues with respect to AF2 claims and that, to the best of Grimm's knowledge, that information was never communicated to LM.  *See* AIA/Merriman Resp. to LM Statement of Facts ¶ 31; LM Statement of Facts, Tab 24 at 103:22-104:1 (deposition of Grimm).  However, AIA/Merriman contends that this information is offset by the fact it told LM about the issue of single entity jurisdiction and SOG and LM agreed to it after concessions were negotiated.  *See* AIA/Merriman Statement of Facts, Ex. 4 at 38-40 (extract from deposition of David Chemiel regarding AF2's single entity status).  The parties also do not dispute that AIA/Merriman faxed LM a copy of the Travelers contract and that this initiated discussions on coverage for AF2.  *See* AIA/Merriman Resp. to LM Statement of Facts ¶ 53.  However, AIA/Merriman argues that LM did not rely solely on the information it provided, but conducted independent negotiations with SOG.  *See,*

*e.g.*, AIA/Merriman Statement of Facts ¶¶ 61 (undisputed that Johnson of LM and Stone of SOG had phone conversations about an agreement to include AF2 on the LM policy with Illinois rates); 62 (undisputed that agreement was signed by Johnson and Stone).

In short, although many of the facts put forth by LM are undisputed, unless the undisputed facts show that only one conclusion can be drawn, "whether a plaintiff's reliance was reasonable . . . is a question of fact" best left for a jury to determine. *See Kopley Group V, L.P. v. Sheridan Edgewater Props., Ltd.*, 876 N.E.2d 218, 229 (Ill. App. 2007). Viewing the facts in the light most favorable to the non-movant, as it must, the court finds that a reasonable jury could infer that LM had an opportunity to discuss SOG's coverage with SOG or Travelers to discover whether jurisdictional coverage problems existed. Thus, a jury could conclude that LM's reliance on AIA/Merriman's misrepresentations was unreasonable. Therefore, LM's motion for summary judgment is denied as to Counts III and IV.

    d.  *Count Seven: Negligence*

LM must prove that AIA/Merriman: owed it a duty of care; (2) breached that duty; and (3) the breach proximately caused its injury. *Ward*, 554 N.E.2d at 226. AIA/Merriman argues that LM cannot prove that it owed LM any duty. The court has determined that AIA/Merriman did owe a duty to report accurate information and forward premiums pursuant to the Assigned Risk Plan. *See* § II(B)(2)(b), *supra*. LM argues that AIA/Merriman breached the standard of care and caused LM damages by: (1) causing duplicative coverage; (2) delaying measures to deal with the AF2 exposure; (3) submitting incorrect payroll figures to Travelers which covered up the true characteristics of the exposure under the Assigned Risk Plan; and (4) failing to advise Travelers and LM that cancelling the Travelers policy would leave AF2 without coverage.

AIA/Merriman does not offer factual arguments in response, and LM asserts, in reply, that it should therefore be granted summary judgment as there are no disputed issues of material fact.

The court is mindful that it must view the record and draw all reasonable inferences in favor of the non-movant, AIA/Merriman. Also, proximate cause is ordinarily a question for the jury to decide and can be a question of law only "when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable [people] as to the inferences to be drawn from them." *Merlo v. Pub. Serv. Co. of N. Ill.*, 45 N.E.2d 665, 675 (Ill. 1943). In the absence of assistance from AIA/Merriman in briefing the issues of disputed facts, the court has reviewed AIA/Merriman's responses to LM's statement of material facts to determine whether they are, as LM asserts, undisputed.

As to the first issue, duplicate coverage, the court finds that AIA/Merriman does not dispute the factual allegations to which LM cites, namely that: (1) Grimm knew on February 28, 2003 that SOG had coverage through LM and the exposure that it covered; (2) the Assigned Risk Plan requires a broker to try to obtain voluntary coverage before applying for Assigned Risk Plan coverage; (3) AIA/Merriman made no attempt to obtain voluntary coverage; (4) AIA/Merriman faxed an application to Travelers for a new policy that covered the same SOG exposure as the LM policy did; and (5) Travelers issued a new policy. *See* AIA/Merriman Resp. to LM Statement of Facts ¶¶ 9-10, 100, 117 (disputing inferences but not factual allegations).

As to the second issue, delaying reporting, AIA/Merriman disputes that it did nothing to cover AF2 in March 2003, pointing to provisions of the SOG contract. *See id.* ¶ 14. AIA/Merriman admits only to a lack of knowledge about why details about coverage for AF2

were not included in reports despite the Assigned Risk Plan's reporting requirements.  *See id.* ¶¶ 15-16, 113.

As to the third issue, payroll reports, AIA/Merriman disputes that it intentionally concealed information, asserting that it provided to Travelers all the information it received from SOG.  *See id.* ¶¶ 26-29.  Whether or not Grimm or other AIA/Merriman employees provided less than complete information rests on the credibility of the witnesses, a determination which is inappropriate for resolution on summary judgment.

As to the fourth issue, notification of cancellation, AIA/Merriman admits that it did not notify the Assigned Risk Plan that AF2 had not been endorsed onto the LM policy.  *See id.* ¶ 41. However, it contends that it had no obligation to do so.

Thus, drawing all inferences in favor of AIA/Merriman, the court concludes that reasonable people could differ in their opinion of whether certain events proximately caused the injuries of which LM complains, even where the facts themselves are undisputed.  Therefore, the issue is best left for the jury to decide and LM's motion for summary judgment is denied as to Count VII.

     3.     <u>Count Five: Conversion</u>[13]

AIA/Merriman asks the court to follow Judge Bucklo's lead and grant summary judgment against LM on its conversion claim because LM cannot "show that it was owed the specific monies AF2 paid to SOG or even the amounts of those monies."  *LM Ins. Corp. v. SourceOne Group, Inc.*, 454 F. Supp. 2d 727, 745 (N.D. Ill. 2006).  AIA/Merriman argues, without reference to the record in this case, that "AIA/Merriman is even more remotely removed

---

[13] LM has brought a cross-motion for summary judgment on Count V.

from [the premium] payments in that they were sent to AIA/Merriman and forwarded to SOG at SOG's direction." AIA/Merriman Mem. of Law in Supp. of Mot. for Summ. J. at 11.

A claim for conversion requires a plaintiff to establish that: "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion or ownership over the property." *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). AIA/Merriman appears to be arguing that LM cannot establish that it has any right to the property (that is, the $600,000) and thus AIA/Merriman is entitled to summary judgment because LM cannot make out a *prima facie* case for conversion.

In response, LM argues that the posture of this case is different from that of the case before Judge Bucko in that the parties are an insurance company and an insurance producer, not an insurance company and the named insured. LM argues that this is significant because an insurance producer has a statutory duty to remit insurance premiums to the insurer.

Illinois law defines an "insurance producer" as "a person required to be licensed under the laws of this State to sell, solicit, or negotiate insurance." 215 Ill. Comp. Stat. 5/500-10.[14] AIA/Merriman does not appear to contend that it is not an insurance producer; therefore it is within the scope of the statute, which provides:

> Any money that an insurance producer . . . receives for soliciting, negotiating, effecting, procuring, renewing, continuing, or binding polices of insurance shall be held in a fiduciary capacity and shall not be misappropriated, converted, or improperly withheld. An insurance company that delivers to any insurance producer in this State a policy or contract for insurance pursuant to the application or request of an insurance producer, authorizes the producer to collect or receive on its behalf payment of any premium that is due on the policy or contract for insurance at the time of its issuance or delivery and any payment that becomes due on the policy or contract not more than 90 days thereafter.

---

[14] The provision, in its current form, became effective January 1, 2002. However, it has been codified since 1937, including at 215 Ill. Comp. Stat. 5/508.1 (2000).

*Id.* § 5/500-15(a).

LM relies heavily on *U.S. Fidelity & Guaranty Co. v. Brokers Affiliated, Ltd.*, 86 C 99, 1987 WL 5404 (N.D. Ill. Jan. 8, 1987), a case concerning premiums wrongfully withheld from an insurer by a broker.  In *U.S. Fidelity*, Judge Moran concluded that an identical predecessor statute "protects insurers as well as insureds."  *Id.* at *2 (citing *Zak v. Fidelity-Phenix Ins. Co.*, 208 N.E.2d 29, 35 (Ill. App. 1965) which noted that "[i]f a broker misappropriates or converts a premium to his own use, it is a matter to be resolved between the broker and the insurance company").  The court in *U.S. Fidelity* noted that "it is difficult to imagine from whom premiums could be 'improperly withheld' if not from an insurer" and that such a conclusion comported with the Illinois Supreme Court holding that "a broker who receives insurance premiums holds them in trust for the insurer."  *Id.* (citing *People ex rel. Bolton v. Progressive Gen. Ins. Co.*, 256 N.E.2d 338, 341 (Ill. 1969)).  Despite its obvious applicability to the case at bar, AIA/Merriman does not address *U.S. Fidelity* in its reply in support of its own motion for summary judgment or in its response in opposition to LM's motion.

In reply, AIA/Merriman simply argues that Judge Bucklo ruled that LM cannot show it was owed the monies AF2 paid to SOG, and that ruling should apply in this case also.  But AIA/Merriman ignores the context of Judge Bucklo's statement.  Judge Bucklo was discussing the relationship of AF2, the insured, to LM.  There was no direct relationship between these parties because SOG and AIA/Merriman functioned as intermediaries.  AF2's obligation to pay ran only to SOG, and SOG's obligation ran to AIA/Merriman; at issue here is whether AIA/Merriman's obligation ran to LM.  Judge Bucklo found that LM had no right to assert a conversion claim against SOG because it was only obliged to pay AIA/Merriman.  Here, LM is

bringing a direct claim against AIA/Merriman as the party that received, but did not forward, money that LM alleges belonged to it.

AIA/Merriman also argues that LM has essentially pleaded itself out of court on this claim by disclaiming that it had agreed to provide coverage, which, according to AIA/Merriman, means that the money could not have been for premiums. The argument misses the point: if AF2 and SOG believed the money they were paying to AIA/Merriman was for premiums on their insurance policy with LM, then the payments should have been passed on to LM as premiums and not used for other purposes. *See* § 5/500-15(a) (shifting to the insurer responsibility for problems experienced by the insured by authorizing the broker to receive payments on its behalf); *Davidson v. Comet Cas. Co.*, 412 N.E.2d 19, 22-23 (Ill. App. 1980) (finding that the statute makes a broker the agent of the insurer for purposes of receiving premiums in order "to protect the public from the misappropriation of premiums by brokers"). The court finds *U.S. Fidelity* to be on point, rejects AIA/Merriman's suggestion that it follow Judge Bucklo's holding in a factually-dissimilar case, and concludes that LM can state a claim for conversion in regard to the $609,258.92 received by AIA/Merriman from SOG and AF2.

Now the court must turn to whether either party has provided sufficient facts to prevail on summary judgment on the conversion claim. The facts are, for the most part, undisputed. AF2 sent AIA/Merriman more than $600,000, which AIA/Merriman did not forward to LM but instead used to make certain payments, including a $35,000 payment described as "AIA Commission." LM Statement of Facts ¶¶ 80, 84. The record shows that personnel at AIA/Merriman's central office in Okemos, Michigan did not know about the $609,258.92, even though Grimm was supposed to send all monies on to the central office. *Id.* ¶¶ 81-83. The main

point of dispute between the parties is whether the money was intended for premium payments, as LM contends. *See id.* ¶ 79 (citing to deposition testimony of Grimm and David Walker, AIA/Merriman's expert witness, for the proposition that the payments made by AF2 to AIA/Merriman were premium payments). AIA/Merriman says the money was payment for certain contract services and that it made the payments "at the direction and authorization of SOG." *See* AIA/Merriman Statement of Facts ¶¶ 23, 30, 31 (citing to a contract provision between AF2 and SOG and deposition testimony of Grimm and David Stone of SOG for the proposition that other payments were allowed from the $600,000). Whether the money was intended for premiums, and if so how much of the total was so designated, is a disputed question of material fact. As such, both parties' motions for summary judgment on this ground are denied.

4. <u>Count Six: Constructive Trust</u>

The parties' arguments regarding this claim are brief. AIA/Merriman argues that LM's constructive trust claim fails for the same reason it argued the conversion claim failed, namely – as Judge Bucklo held – "while SOG might have breached its fiduciary duty to AF2, there is no evidence that any money AF2 provided to SOG clearly belongs to LM, such that [the] court should declare a constructive trust." *LM Ins. Corp.*, 454 F. Supp. 2d at 746. In response, LM notes that, pursuant to the reasoning of *U.S. Fidelity*, an insurance producer has a fiduciary duty to the insurer. AIA/Merriman replies – without addressing *U.S. Fidelity* – that, even if it has a fiduciary relationship, LM has put forth no facts to show the money belongs to it.

"A constructive trust is created when a court declares the party in possession of wrongfully acquired property as the constructive trustee of that property because it would be

inequitable for that party to retain possession of the property." *Suttles v. Vogel*, 533 N.E.2d 901, 904 (Ill. 1988). A constructive trust may be imposed where there is actual or constructive fraud or where there is a breach of fiduciary duty. *Id.* Because the relationship between the parties differs, the court finds AIA/Merriman's reliance on Judge Bucklo's ruling on LM's claim of constructive trust against SOG unpersuasive. An insurance producer holds premium monies in trust for the insurer and therefore owes it a fiduciary duty. *See People ex rel. Bolton*, 256 N.E.2d at 341 (holding that a Director of Insurance as Rehabilitator "was entitled to and had constructive possession of all property held by [the insurer's] fiduciaries in trust for it" where the trust funds sought were premiums received by the broker for the account of the insurer); *Int'l Adm'rs, Inc. v. Life Ins. Co. of N. Am.*, 553 F. Supp. 82, 85-86, 85 n.10, 86 n.11 (N.D. Ill. 1982) (discussing that Ill. Rev. Stat. ch. 73, § 1065.52, § 5/400-115's predecessor, "was enacted not only to protect the insured public but also to express the broker's fiduciary obligations to the insurer as well" and therefore the statute provided foundation for an insurer's unpaid premium claim to withstand a motion to dismiss on agency principles and conversion grounds). Thus, the court rejects AIA/Merriman's argument that the claim for constructive trust must fail and finds the same issues of material fact in dispute as it did for the conversion claim. AIA/Merriman's motion for summary judgment is denied as to Count VI.

5.     Jurisdictional Argument

AIA/Merriman renews, as part of its motion for summary judgment, its argument that the court lacks jurisdiction over Fed Equities, Merr, AIA, and Grimm. The court considered this argument when AIA/Merriman filed a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). On March 9, 2006, the court held that jurisdiction is

proper under federal and Illinois due process. In its motion, AIA/Merriman argues that "Fed Equities, Inc. and Affiliated Insurance Agency, Inc. should be dismissed, as they were simply grouped into LM's Amended Complaint by virtue of their ownership of Merr[,] Inc., which . . . is insufficient to create liability, let alone jurisdiction." AIA/Merriman Mem. of Law in Supp. of Mot. for Summ. J. at 13 (citing to AIA/Merriman Statement of Facts ¶ 5); Reply in Supp. of Mot. for Summ. J. at 12 (same).

The Amended Complaint was filed on October 12, 2006, after the court's decision on the motion to dismiss, but AIA/Merriman's argument that this makes a difference is unpersuasive. Both Fed Equities and AIA were named in the original complaint, and AIA/Merriman's motion to dismiss for lack of jurisdiction was brought on behalf of Fed Equities, Merr, AIA, and Grimm. Thus, AIA/Merriman had an opportunity to brief any arguments that exist as to ownership when it filed its motion in May 2005. The fact it asserts in its summary judgment motion, namely a chart showing alleged corporate relationships, is identical to what was presented in its motion to dismiss. *Compare* AIA/Merriman Statement of Facts ¶ 5 (diagram showing the alleged relationships of the defendants), *with* Mem. in Supp. of Defs.' Mot. to Dismiss For Lack of Personal Jurisdiction at 3 (same). AIA/Merriman has already raised the identical argument it raises here. The court has already decided the issue and it declines to do so again. *See Moriarty ex rel. Local Union No. 727 v. Svec*, 429 F.3d 710, 722-23 (7th Cir. 2005) (refusing to revisit a jurisdictional decision it had made in a case, noting that "[t]he law of the case doctrine advises against a court reopening previously decided issues").

To the extent that AIA/Merriman asks the court to *reconsider* its decision, it should have brought a timely motion pursuant to Rule 60 (not, as LM argues, pursuant to Rule 59(e)). *See*

Fed. R. Civ. P. 60(c) (stating a motion for relief from a judgment or order must be brought within a reasonable time and that motions brought for certain reasons must be brought within one year of the entry of the order). The court issued its order on March 9, 2006 and AIA/Merriman filed its motion for summary judgment on July 16, 2007, more than a year later; this is not timely. AIA/Merriman's renewed motion is denied.

6.      Wrongdoing On The Part of Fed Equities And AIA

AIA/Merriman argues that "there has been no evidence put forth upon which Fed Equities . . . or [AIA] may be found liable." AIA/Merriman Mem. of Law in Supp. of Mot. for Summ. J. at 13. It puts forth a bare legal argument that a parent corporation may not be held liable for the wrongdoing of a subsidiary, but fails to support its implicit argument that Fed Equities and AIA are the "parent" companies with citations to the record or even its own statement of facts. Nevertheless, because LM has the burden of making out a *prima facie* case, the court must consider also whether LM has put forward sufficient evidence for a reasonable jury to conclude that LM has a viable claim against each defendant.

In its response, LM argues that the issue of parent/subsidiary is irrelevant because it has sued all defendants for their own malfeasance. As an example, it presents the undisputed fact that transfers in the amount of $609,258.92, money that LM alleges belonged to it as premiums, were wired to AIA's bank account. *See* LM Rebuttal Facts ¶ 33. LM's allegations of wrongdoing by Fed Equities are more complex, but LM basically argues that, as part of "the Federau Group," Fed Equities was involved in the deals between SOG and AIA/Merriman, even if not specifically named.[15] *Id.* ¶¶ 34-38. In reply, AIA/Merriman does not address these facts; it simply asserts again that LM has failed to provide any proof of wrongdoing. However, the court

---

[15] LM also supplies facts to justify its inclusion of Grimm, but since AIA/Merriman raised the defense only for Fed Equities and AIA, the court does not address the facts relating to Grimm.

must construe all inferences in favor of the non-movant (LM), and a reasonable inference is that both Fed Equities and AIA were involved in acts, specifically receiving money and facilitating transactions and agreements, that resulted in LM's damages. Thus, a reasonable jury could conclude that each defendant is independently liable, regardless of parent/subsidiary relationship.

       7.      <u>Whether LM Has Standing Or Is The Real Party In Interest</u>

          a.     <u>Standing</u>

AIA/Merriman argues that LM has no injury in fact and therefore lacks standing to pursue it claims. It bases the argument on a truncated quote from a deposition answer of Neil Johnson, assistant vice president of LM ("Johnson"). *See* AIA/Merriman Mem. of Law in Supp. of Mot. for Summ. J. at 14-15 (citing to LM Statement of Facts, Tab 42 at 159:3-159:20). In response, LM argues that: (1) because AIA/Merriman did not raise standing in its Answer to the Amended Complaint it has waived the defense; and (2) the testimony cited relates to the existence of reinsurance, which does not negate LM's standing. AIA/Merriman argues, in reply, that it did not know about the standing problem until after the deposition of Johnson, which "was taken after [LM] had filed its Amended Complaint, and only came to light after [AIA/Merriman] had answered Plaintiff's Amended Complaint." *See* AIA/Merriman Reply at 14.

In making an argument that LM has suffered no injury in fact, and therefore lacks standing, AIA/Merriman appears to be alleging that because LM is reinsured by the Assigned Risk Plan, and is therefore reimbursed for losses that it sustained due to AIA/Merriman's failure to pay its premiums, LM suffered no injury. The argument is specious. A plaintiff suffers an "injury in fact" when the defendant invades a legally protected interest which is concrete and particularized, and actual or imminent, not conjectural or hypothetical. *Whitmore v. Arkansas*,

495 U.S. 149, 155 (1990).  In the instant case, LM alleges it had a contractual right, as the insurer, to collect payments from the broker, as agent for the insured.  That legally protected interest was invaded when AIA/Merriman allegedly failed to pay LM the premiums due.  That is sufficient to establish standing.  The fact that LM had reinsurance against loss (which is required of insurers participating in the Assigned Risk Plan) does not negate the invasion of LM's protectable interest in collecting payments.  And even if LM is reimbursed via reinsurance from the Assigned Risk Plan for losses it may sustain when claims are paid out, but premiums are not paid in, the distribution costs of higher reinsurance rates are an injury stemming directly from the insured's defaulting on an insurance policy.  AIA Merriman's motion for summary judgment for lack of standing is therefore denied.

> b.    Real Party In Interest

AIA/Merriman submits one paragraph of argument, again relying on the extract from Johnson's deposition testimony, in support of its request that the entire Amended Complaint be dismissed on the grounds that LM is not the real party in interest because "LM's only interest is to recover on behalf of the [Assigned Risk] Plan."  *See* AIA/Merriman Mem. of Law in Supp. of Mot. for Summ. J. at 15 (citing to Fed. R. Civ. P. 17).  LM contends that: (1) AIA/Merriman also waived this argument by not raising it in its answer; and (2) it is the real party in interest because reinsurance has nothing to do with the underlying claims.

AIA/Merriman fails to address LM's argument or facts in its reply.  It simply argues that the defense is not waived, pursuant to federal law, and restates its conclusory argument that the Assigned Risk Plan is the real party in interest and that the claims should be dismissed pursuant to Rule 17.  However, AIA/Merriman fails to explain how Rule 17 applies to the facts and

substantive law at issue. Nor does it cite cases to explain how the information revealed in the short deposition extract upon which it relies bars LM's ability, as an insurance company, to sue a broker. Nor does it explain why the court should not treat its assertion that LM is not the real party in interest as an affirmative defense, as many other cases have done. Nor does it explain why, if it is an affirmative defense, it would not be subject to waiver pursuant to Illinois law for the same reasons as discussed *supra*. The absence of argument or direction from the movant compels the court to deny its motion.[16] *See, e.g.*, *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority . . . forfeits the point. [The court] will not do his research for him."). Accordingly, summary judgment on this basis is denied.

### III. CONCLUSION

For the reasons stated above, the court denies plaintiff's motion for partial summary judgment. It grants defendants' motion for summary judgment as to Count I and denies it as to Counts II-VII.


ENTER:


_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge


DATED: March 28, 2008

---

[16] Even if AIA/Merriman were correct, which the court does not decide, Rule 17 prohibits dismissal before the real party in interest has had a reasonable opportunity to join the action. *See* Fed. R. Civ. P. 17(a)(3).